UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br>DOUGLAS J. KOCH,<br>                              Debtor. | BKY No. 15-44325<br>Adv. No. 16-04032 |
| DAVID GAVIN,<br>                              Appellant,<br>v.<br>DOUGLAS J. KOCH,<br>                              Appellee. | Civil No. 16-2334 (JRT)<br><br>**MEMORANDUM OPINION AND ORDER ON ORDER OF THE BANKRUPTCY COURT** |

Erik F. Hansen, **BURNS & HANSEN, P.A.**, 8401 Wayzata Boulevard, Suite 300, Minneapolis, MN 55426, for appellant;

Matthew R. Burton, **LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD**, 100 South Fifth Street, Suite 2500, Minneapolis, MN 55402, for appellee.

In this bankruptcy appeal, Appellant David Gavin challenges the Bankruptcy Court's dismissal of his 11 U.S.C. § 523(a)(2)(A) and (B) claims against Appellee Douglas J. Koch. The Bankruptcy Court determined that Gavin's claims of fraud failed to satisfy the heightened pleading standards applicable under Fed. R. Civ. P. 9(b). Because the Court concludes that Gavin adequately pleaded the elements of a § 523(a)(2)(A) claim, the Court will vacate the Bankruptcy Court's order in part and remand to allow that claim to proceed. However, as the Court finds that the Share Purchase Agreement is not a "statement in writing . . . respecting the debtor's or an insider's financial condition" for purposes of § 523(a)(2)(B), the Court will affirm the

Bankruptcy Court's order dismissing that claim – albeit for a different reason than the Bankruptcy Court's determination that Gavin failed to identify a statement in writing.

## BACKGROUND

Gavin previously owned Northland Employment Services, Inc., a Minnesota Corporation ("Northland"). (Appellant's Br., Attach. ("App.") at 67, Aug. 5, 2016, Docket No. 10.)[1]  Around October 1, 2009, Gavin entered into to a Share Purchase Agreement where he sold all of Northland's stock to NAK, LLC ("NAK"), a Minnesota limited liability company. (*Id.*)  Gavin financed a portion of the sale through operation of a Promissory Note, whereby NAK was obliged to make payments to him over a period of time. (*Id.* at 68, 119-20.)

During the sale, Koch, Matthew L. Anderson and Gary Nygaard specifically represented they were the sole members of NAK. (*Id.* at 68.)  In fact, four other individuals collectively owned ten percent of NAK's outstanding membership interest for the sole purpose of "secur[ing] the financing required to complete the Share Purchase Agreement." (*Id.*)  Koch, Nygaard, and Anderson intentionally and deliberately made the false representation regarding NAK's ownership, intending that Gavin "would rely upon it, in order to induce [Gavin] to enter into the Share Purchase Agreement." (*Id.* at 70.)  Gavin would not have entered into the agreement had he known the truth. (*Id.*)

Following the sale, Koch, Nygaard, and Anderson violated the terms of the Shareholder Control Agreement by altering their compensation and pledging NAK's

---

[1] Gavin filed an appendix as an attachment to his brief at Docket Number 10. The appendix is consecutively paginated, and references to the appendix in this Order will be to that pagination. Furthermore, because the Court is reviewing the granting of a motion to dismiss, the Court assumes the facts as set out in the Amended Complaint, (App. at 66-85), are true.

corporate assets without first consulting with Gavin. (*Id.* at 72.) After providing opportunities to cure these breaches, Gavin commenced an action against Koch, NAK, Nygaard, and Anderson on November 6, 2014, alleging violation of the Share Purchase Agreement. (*Id.* at 72-73.) The parties settled the matter on January 15, 2015. (*Id.* at 73.) As part of that mediated settlement agreement, the parties agreed that Gavin was owed $407,500.00 on the Promissory Note and detailed when such payments would be made. (*Id.* at 73-74.) However, at the time of entering into the agreement, Koch, Nygaard, and Anderson had no intention of performing as they knew NAK would be unable to pay Gavin, but they nevertheless sought to induce Gavin to delay efforts to enforce the Share Purchase Agreement. (*Id.* at 74-75.) Shortly thereafter, Koch and the others defaulted on their payments to Gavin. (*Id.* at 75-76.)

In response to Gavin's notices regarding their defaults, on June 5, 2015, counsel for Koch, NAK, Nygaard, and Anderson sent a letter to Gavin's counsel, which stated "[o]ur clients need to suspend payments to your client until the debts to the IRS and State of Minnesota have been paid." (*Id.* at 76.) Koch then petitioned for Chapter 7 bankruptcy on December 18, 2015. (*Id.* at 66.) Gavin commenced this action on March 21, 2016, alleging that Koch obtained Gavin's money or property by false representation and that the debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(19)(A)(ii), and (a)(19)(B)(ii). (*Id.* at 1, 13-19.) Subsequently, on April 19, 2016, Koch moved to dismiss the complaint. (*Id.* at 20-23, 35-47.) On May 5, 2016, the Bankruptcy Court issued an order granting Koch's motion to dismiss Gavin's § 523(a)(19)(A)(ii) and (B)(ii) claims, but allowing Gavin to file an amended complaint

on his § 523(a)(2)(A) and (B) claims.[2]  (*Id.* at 65.)  Gavin filed an amended complaint regarding the latter claims on May 20, 2016, (*id.* at 66-85), and Koch subsequently renewed his motion to dismiss on June 2, 2016 (*id.* at 161-69).

On June 22, 2016, the Bankruptcy Court determined that Gavin failed to adequately plead the elements of his § 523(a)(2)(A) and (B) claims under the heightened pleading standards applicable to fraud claims under Fed. R. Civ. P. 9(b), and therefore granted Koch's motion to dismiss with prejudice.  (Bankr. Tr. of Hr'g at 47:6-10, July 21, 2016, Docket No. 6.)  On July 6, 2016, Gavin filed a notice of appeal; Gavin contends the Bankruptcy Court's determination was erroneous because, under the Bankruptcy Court's logic, Gavin would need to conclusively prove his assertions at the pleading stage.

---

[2] 11 U.S.C. § 523(a) provides, in pertinent part, that:

A discharge under [11 U.S.C. § 727] does not discharge an individual debtor from any debt--

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]

(B) use of a statement in writing--

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive[.]

## DISCUSSION

I.  STANDARD OF REVIEW

In bankruptcy proceedings, the Court sits as an appellate court and reviews the Bankruptcy Court's conclusions of law *de novo* and its findings of fact for clear error. *See Reynolds v. Pa. Higher Educ. Assistance Agency* (*In re Reynolds*), 425 F.3d 526, 531 (8th Cir. 2005). Thus, the Court will review *de novo* the Bankruptcy Court's dismissal of Gavin's complaint. *Minn. Majority v. Mansky*, 708 F.3d 1051, 1055 (8th Cir. 2013).

In reviewing a dismissal under Rule 12(b)(6), the Court views a complaint in "the light most favorable to the nonmoving party." *Longaker v. Boston Sci. Corp.*, 872 F. Supp. 2d 816, 819 (D. Minn. 2012). The Court considers all facts alleged in the complaint as true to determine whether the complaint states a "'claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility[,]'" and therefore must be dismissed. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Therefore, to survive a motion to dismiss, a complaint must provide more than "'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### II.     11 U.S.C. § 523(a)(2)(A)

Upon careful review of Gavin's pleading, the Court finds that the Bankruptcy Court erred as a matter of law in determining Gavin failed to adequately plead the elements of a § 523(a)(2)(A) claim. To properly plead a fraud claim under Fed. R. Civ. P. 9(b) – which applies to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7009 – "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The pleading must provide the defendant with enough information "to be apprised of the claim against him and name[] the specific actions upon which plaintiff relies to prove up the fraud." *Lebedun v. Throneberry* (*In re Throneberry*), 423 B.R. 765, 769 (Bankr. E.D. Mo. 2010). "[I]t is it is not necessary that a plaintiff plead each fraudulent detail, so long as the circumstances constituting fraud have been set forth adequately." *Gasunas v. Yotis* (*In re Yotis*), 521 B.R. 625, 633-34 (Bankr. N.D. Ill. 2014).

To prove that a debt is nondischargeable under § 523(a)(2)(A), a creditor must demonstrate the following elements: (1) the debtor made a representation, (2) the debtor knew the representation was false at the time it was made, (3) the debtor made the representation deliberately and intentionally "with the intention and purpose of deceiving the creditor," (4) the creditor justifiably relied on the representation, and (5) the creditor sustained the alleged loss as the proximate result of the representation. *Merchs. Nat'l Bank of Winona v. Moen* (*In re Moen*), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999).

The Bankruptcy Court determined that Gavin's § 523(a)(2)(A) claim merited dismissal because: (1) Gavin failed to sufficiently plead facts to show elements three through five of a § 523(a)(2)(A) claim; (2) Gavin's pleadings did not go beyond "threadbare recitals" and "conclusory statements"; and (3) Gavin failed to plead with particularity the "who, what, when, where, and how" surrounding Koch's fraud. (Bankr. Tr. of Hr'g at 43:14-44:16); *see Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) ("Rule 9(b) requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'") (*quoting Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007).

The Court finds that Gavin's amended complaint provides sufficient information to proceed on his § 523(a)(2)(A) claim. Gavin clearly pleaded the first two elements of a § 523(a)(2)(A) claim: Gavin alleged that Koch knowingly misrepresented NAK's ownership at the time of sale. (App. at 68-69.) Additionally, Gavin pleaded that Koch's misrepresentation was "intentional[] and deliberate[]" solely in order "to secur[e] the financing required to complete the Share Purchase Agreement." (*Id.* at 69.) Gavin further explained: "[I] relied on the understanding that the named owners had obtained financing for the purchase on their own, indicating that each maintained a strong financial position. However, the statements regarding the financial condition were false, as evidenced by Defendant's needing straw buyers to finance the purchase of NAK." (*Id.* at 187.) Furthermore, Gavin "relied upon that averment . . . in entering into the Share Purchase Agreement," (*id.* at 70), and as a result, was damaged, as "the entire amount of the Share Purchase Agreement [is] due and owning" to Gavin, (*id.* at 84). Thus, Gavin's

pleading regarding NAK's ownership adequately sets forth the elements of his § 523(a)(2)(A) claim.

Furthermore, the Court also finds Gavin's pleading adequately sets out the elements of a § 523(a)(2)(A) claim regarding Koch's representations about NAK's ability to make payments as set forth in the mediated settlement agreement.  Gavin pleaded that when the parties entered into that agreement, Koch knew that NAK was "unable and would be unable to make the payments" but Koch represented that the opposite was true "solely to delay litigation and other enforcement efforts," and to induce Gavin to enter the agreement.  (*Id.* at 74.)  In support of Gavin's allegation of Koch's scienter, Gavin demonstrates that less than two months after the mediated settlement agreement, Koch's counsel communicated that NAK could not pay Gavin due to outstanding debts to the IRS and the State of Minnesota.  (*Id.* at 76.)  However, Gavin asserts Koch would have known about these debts at the time of the agreement.  Koch nevertheless promised to pay Gavin in order to induce Gavin to settle, and Gavin "relied upon that promise of payments."  (*Id.* at 73-75.)  As a result, Koch's failure to pay the debt of $407,500.00 damaged Gavin.  (*Id.* at 77.)

Contrary to the Bankruptcy Court's finding that Gavin's pleading is threadbare and conclusory, the Court finds Gavin sufficiently identified the "who" (Koch), "what" (false statements regarding NAK's ownership and NAK's ability to make payments), "when" (on or about October and October 15, 2009, and January 15, 2015, respectively), "where" and "how" (by inducing Gavin to enter into the Share Purchase Agreement and mediated settlement agreement, wherever executed) surrounding Koch's fraud.  *See*

*Summerhill*, 637 F.3d 877, 880 (8th Cir. 2011).  Because Gavin's pleading adequately sets forth the elements of a § 523(a)(2)(A) claim against Koch, the Court will vacate the Bankruptcy Court's order in part and remand to allow this claim to proceed.

**III.    11 U.S.C. § 523(a)(2)(B)**

The Court agrees with the Bankruptcy Court that Gavin's § 523(a)(2)(B) claim merits dismissal.  To show a debt is nondischargeable under § 523(a)(2)(B), a creditor must prove "that the debtor obtained money by (1) use of a statement in writing that was materially false; (2) that pertained to [the debtor's] or [the debtor's business's] financial condition; (3) *on which the plaintiff reasonably relied*; and (4) that the debtor made with the intent to deceive the plaintiff."  *Bank of Neb. v. Rose* (*In re Rose*), 483 B.R. 540, 543-44 (B.A.P. 8th Cir. 2012).

The Bankruptcy Court found that "in the specific discussion about 523(a)(2)(B) in the complaint, the plaintiff fails to sufficiently and with specificity identify which statement in writing satisfies the elements of a claim brought under 523(a)(2)(B)."  Bankr. Tr. of Hr'g at 46:13-19.  However, Gavin repeatedly asserted that the Share Purchase Agreement – identifying only Koch, Nygaard, and Anderson as the owners of NAK – was the materially false written statement for purposes of his § 523(a)(2)(B) claim.  (App. at 79.)  Thus, because Gavin's pleading does specifically identify the relevant written statement, the Court will not adopt the Bankruptcy Court's reasoning for dismissing Gavin's claim pursuant to § 523(a)(2)(B).

Instead, in determining whether the Share Purchase Agreement is a materially false written statement regarding NAK's financial condition, the Court notes that there

are "both broad and strict interpretations of what constitutes a statement respecting financial condition" for purposes of § 523(a)(2)(B).  *Skull Valley Band of Goshute Indians v. Chivers* (*In re Chivers*), 275 B.R. 606, 614 (Bankr. D. Utah 2002).  The broad interpretation includes "[s]tatements concerning conditions to purchase of an asset, ownership of particular property, indebtedness to a creditor[,] and encumbrances on assets."  *Id.*  In contrast, the strict interpretation includes "financial-type statements including balance sheets, income statements, statements of changes in financial position, or income and debt statements that provide what may be described as the debtor or insider's net worth, overall financial health, or equation of assets and liabilities."  *Id.* at 615.

Gavin has not explained how the Share Purchase Agreement falls into either interpretation of the statute.  Furthermore, it appears that even the broad interpretation does not encompass the Share Purchase Agreement, as that document does not represent NAK's assets or liabilities.  Gavin cites to *In re Long* in which the Eighth Circuit held that an allegation that the debtor "obtained excessive loans by misrepresenting the value of its inventory" concerned the debtor's "financial condition" for purposes of § 523(a)(2)(B).  *Barclays Am./Bus. Credit, Inc. v. Long* (*In re Long*), 774 F.2d 875, 877 (8th Cir. 1985).  However, while the value of a business's inventory directly relates to a business's financial condition, the relationship of named owners of a business to that business's financial condition is much more attenuated.

As the Court is not aware of any support for Gavin's assertion that the Share Purchase Agreement is a statement that relates to NAK's "financial condition" to satisfy

the second element of a § 523(a)(2)(B) claim, the Court will affirm the Bankruptcy Court's order to dismiss Gavin's § 523(a)(2)(B) claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **VACATES in part** the Bankruptcy Court's Order dated June 22, 2016 [Docket No. 4, Attachment 7] and **REMANDS** for further proceedings to allow Gavin's claim under 11 U.S.C. § 523(a)(2)(A) to proceed. The Court **AFFIRMS** the portion of the Bankruptcy Court's Order dismissing Gavin's claim under 11 U.S.C. § 523(a)(2)(B).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 29, 2017　　　　　　　　　　____s/ John R. Tunheim____
at Minneapolis, Minnesota.　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court